IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| **IN RE: SIMPLY ORANGE ORANGE JUICE MARKETING & SALES PRACTICES LITIGATION**<br><br>**ALL ACTIONS** | MDL No. 2361<br><br>Master Case No. 4:12-MD-02361-FJG |

## ORDER

Currently pending before the Court is Defendants' Motion to Dismiss (Doc. No. 26 & 27). For the reasons set forth below, Defendants' Motion is **DENIED**.

**I. BACKGROUND**

This multidistrict litigation consists of 13 cases currently pending before this Court. These cases involve allegations concerning Simply Orange Juice ("Simply Orange"), Minute Maid Pure Squeezed ("MM Pure Squeezed"), and Minute Maid Premium ("MM Premium"). Plaintiffs allege that the producer and marketer of branded fruit juices, The Coca-Cola Company ("Coca-Cola"), from at least March 2006[1] to present ("Class Period") has been falsely claiming through advertising that its products are natural. Plaintiffs allege that instead, each product is heavily processed, pasteurized, deaerated, and flavored. Specifically, Plaintiffs state that FDA standards require Defendants label Simply Orange and MM Pure Squeezed to denote that they have each been processed above levels of "incidental additives" with orange oil, orange essence, and other volatile and chemically engineered compounds. This causes the basic composition of the juice to become different from that of pure, natural, freshly squeezed orange juice and thus,

---

[1] Claims arising for MM Pure Squeezed accrue from October 2011 to present.

the orange oil, orange essence and other chemically engineered compounds must be labeled as "ingredients" on each product. Further, MM Premium lacks labeling which denotes that it undergoes the process of dewatering and freezing and then is reconstituted by melting frozen concentrated orange juice and mixing it with water. Plaintiffs state that due in part to consumers' false belief of the purity and freshness of each product, consumers have been paying a premium price for the orange juice that they otherwise would not have paid. Plaintiffs seek relief in this action both individually, as well as on behalf of classes. (Doc. No. 23).

The Master Consolidated Complaint ("MCC") states that each product contains the following labeling which Plaintiffs assert is false:

- Simply Orange:

    a) "100% pure squeezed"
    b) "not from concentrate"
    c) "Simply Orange"
    d) "pure"
    e) "natural"

- MM Pure Squeezed:

    a) "pure-squeezed"
    b) "100% pure squeezed"
    c) "never from concentrate"

- MM Premium:

    a) "100% pure squeezed"
    b) "100% orange juice"
    c) "natural orange goodness"

On September 14, 2012, Defendants filed the present Motion to Dismiss (Doc. No. 26).

**II.     STANDARD OF REVIEW**

In ruling on a motion to dismiss, the Court must view the allegations in the Complaint in the light most favorable to Plaintiff. Graham Constr. Serv., Inc. v. Hammer & Steel, Inc., No. 4:11-CV-1316 JCH, 2012 WL 685459, at *2 (E.D. Mo. Mar. 2, 2012) (citing Eckert v. Titan

2

Tire Corp., 514 F.3d 801, 806 (8th Cir. 2008)). Additionally, the Court must accept the allegations contained in the Complaint as true and draw all reasonable inferences in favor of the nonmoving party. Id. (citing Coons v. Mineta, 410 F.3d 1036 (8th Cir. 2005)). A motion to dismiss must be granted, however, if the Complaint does not contain enough facts to state a claim to relief that is plausible on its face. Id. (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). While a Complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Id. Stated differently, to survive a motion to dismiss the Complaint's factual allegations, must be enough to raise a right to relief above the speculative level. Id.

**III. DISCUSSION**

Defendants assert that Plaintiffs' MCC should be dismissed for several reasons. First, Plaintiffs' state law claims are expressly preempted by federal law. The Federal Food Drug and Cosmetic Act ("FDCA") expressly preempts states from imposing any requirement for foods subject to a standard of identity that is not identical to that prescribed by the U.S. Food and Drug Administration ("FDA"). Accordingly, FDCA's express preemption provision bars private Plaintiffs from asking a court to usurp, preempt, or undermine FDA's authority by imposing food labeling requirements that federal law does not. In this case, the FDA has established standards which prescribe the methods that should be used in the production of orange juice and dictate how the juice should be named and labeled. Further, even if Plaintiffs' claims were true, Plaintiffs are barred from pursuing such claims because they inherently seek to enforce the FDCA, a statute with no private right of action. Second, Plaintiffs' claims are barred by the safe

3

harbor doctrine, which recognizes that in deference to other branches of government, private parties cannot ask a judge or jury to find that a practice expressly permitted by law is deceptive or unlawful. Third, Plaintiffs' claims are legally barred and factually deficient because the preemption and safe harbor doctrines extend to non-label advertising. Furthermore, none of the Plaintiffs allege that he or she ever saw ads or advertisements. Plaintiffs cannot challenge ads they did not see. Fourth, once Plaintiffs' preempted claims are set aside, it is clear that the remaining allegations are directed to statements that are indisputably true or non-actionable commercial puffery. Fifth, Plaintiffs do not have standing because they have not suffered any injury in fact by alleging that their purchases *ipso facto* caused economic loss. Finally, Defendants request that the Plaintiffs not mentioned in the MCC be dismissed from the action. (Doc. No. 26, 27, & 38).

Plaintiffs assert the MCC should not be dismissed. First, Plaintiffs' claims are not preempted. The provisions and legislative history of the FDCA and the Nutrition Labeling and Education Act ("NLEA") contradict any suggestion of congressional intent to broadly preempt consumer protection laws. The primary purpose is to provide greater clarity for consumers and additional protection, not to shield food manufacturers from liability for making misleading claims about their products to the detriment of consumers. Further, Plaintiffs either seek to enforce state laws that impose disclosure requirements identical to those imposed by the FDCA and the NLEA, or that cover matters not within the scope of those laws. As such, Plaintiffs' claims are not preempted. Second, Defendants are not shielded from liability by the state safe harbor doctrines. Defendants' argument is nothing more than a smokescreen that recycles an implied preemption argument - an argument that the NLEA rejects. Third, Plaintiffs' claims are not legally barred and factually deficient. State deceptive trade practice laws do not require

4

individualized evidence of each consumer's reliance on the misrepresentation. Further, where misrepresentations and false statements are part of an extensive and long-term advertising campaign, reliance on specific advertisements is not required. Fourth, Defendants' labeling and advertising statements are specific and measurable claims, capable of being proved false or of being reasonably interpreted as a statement of objective fact. As such, Defendants' statements do not amount to mere commercial puffery. Fifth, Plaintiffs have pled sufficient injury in fact. Plaintiffs asserted a legally protected interest which is concrete and particularized and actual or imminent by stating that consumers paid more for a product than they otherwise would have because of a company's inaccurate or misleading representations about the product's attributes. Finally, Plaintiffs request that if the MCC is found to be defective in any way, they would like to amend the MCC to cure any defects. (Doc. No. 36).

### A.) Preemption

A preemption analysis begins with a presumption against preemption. Cipolione v. Liggett Group, Inc., 505 U.S. 504, 516 (1992). The text and legislative history of the FDCA plainly show that its purpose was not confined to a requirement of truthful and informative labeling. Fed. Sec. Adm'r v. Quaker Oats Co., 318 U.S. 218, 230 (1943). The purpose of the FDA is to promulgate definitions and standards of identity under which the integrity of food products can be effectively maintained to promote honesty upon which a consumer can rely. Id. States have always possessed a legitimate interest in the protection of their people against fraud and deception in the sale of food products at retail markets within their borders. Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 144 (1963). Nonetheless, the FDCA expressly preempts states from imposing any requirement for foods subject to a standard of identity that is not identical to the FDA's regulations. 21 U.S.C. § 343(g). However, the FDA has also

5

explicitly stated that to the extent a state requirement is identical to the standard of identity of federal law, state requirements are not subject to preemption. 58 Fed.Reg. 2462. In this case, the claims which Plaintiffs assert either seek to enforce state laws that impose requirements identical to those imposed by the FDCA and the NLEA or cover matters not directly within the scope of those laws. Accordingly, Plaintiffs' claims are not preempted.

Furthermore, although "no private cause of action exists for violation of the FDCA, ….this does not mean, however, that state law claims are completely precluded." Loreto v. Procter & Gamble Co., 737 F.Supp.2d 909, 919 (S.D. Ohio 2010). "Insofar as Plaintiffs can identify specific representations by Defendants that are literally false, misleading, or contain material omissions, the claims are actionable under [state] consumer fraud laws." Id. Plaintiffs must allege that a Defendant's noncompliance with the FDCA regime misled and thereby harmed consumers. Id. at 919-22. In this case, Plaintiffs have asserted such and are thus, permitted to bring their claims. Accordingly, Plaintiffs' MCC is sufficient to survive a Motion to Dismiss on this issue.

### B.) Safe Harbor Doctrine

Defendants' safe harbor doctrine argument is essentially an implied preemption argument. For the aforementioned reasons, this argument does not suffice. Plaintiffs' claims are not preempted. Accordingly, Plaintiffs' MCC is sufficient to survive a Motion to Dismiss on this issue.

### C.) Legally Barred and Factually Deficient

Whether Plaintiffs actually ever saw ads or advertisements of Simply Orange, MM Premium, and MM Pure Squeezed is not dispositive of the case at hand. Although some courts have established that a plaintiff lacks standing to challenge ads they did not see, these courts

6

have done so because a presumption of reliance does not arise when class members are exposed to quite disparate information from various representatives of a defendant. Mazza v. American Honda Motor Co., 666 F.3d 581, 595-96 (9th Cir. 2012). However, where the alleged misrepresentations and false statements are part of an extensive and long-term advertising campaign, reliance on specific advertisements is not required. In re Tobacco II Cases, 207 P.3d 20, 40-41 (Cal. 2009). In this case, Plaintiffs allege they were subjected to long-term advertising of Defendants' products. This is sufficient to survive a Motion to Dismiss on this issue.

### D.) Non-Actionable Commercial Puffery

Whether a statement constitutes mere puffery or a statement of fact is a legal question that may be resolved on a Rule 12(b)(6) motion. Newcal Indus., Inc. v. Ikon Office Solution, 513 F.3d 1038, 1053 (9th Cir. 2008). Ultimately the difference between a statement of fact and mere puffery, though, rests in the specificity or generality of the claim. Id. Puffery is the following: (1) exaggerated statements of bluster or boast upon which no reasonable consumer would rely; and (2) vague or highly subjective claims of product superiority. American Italian Pasta Co. v. New World Pasta Co., 371 F.3d 387, 390-91 (8th Cir. 2004) (holding statement that product advertising phrase, "America's Favorite Pasta" was puffery because the statement was vague, exaggerated, and broad). A factual claim, on the other hand, is a statement that admits to being adjudged true or false in a way capable of empirical verification. Id. To be actionable, the statement must be a "specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." Id. This includes things such as a percentage. Id. Upon its review of the claims pled in the MCC, the Court finds that it cannot determine as a matter of law the advertising claims amount to mere puffery. Therefore, the Court finds Plaintiffs' claims are sufficient to survive a Motion to Dismiss on this issue.

7

### E.) Standing

Plaintiffs have pled sufficient injury in fact to survive a Motion to Dismiss. In Veal v. Citrus World, No. 2:12-CV-801-IPJ, 2013 WL 120761 (N.D. Ala. Jan. 8, 2013), the Plaintiff brought a claim against Florida Natural Orange Juice asserting the maker manipulated the flavor of the orange juice through the addition of various compounds to mask the taste that results from extensive processing. Plaintiff claimed Defendant then marketed the orange juice as 100% orange juice for which Plaintiff paid a premium price based on this representation. Plaintiff claimed this representation was false and he did not get the "benefit of his bargain". Plaintiff brought claims for breach of warranty and breach of contract. The Court held Plaintiff lacked Article III standing. The Court stated that "benefit of the bargain" theories do not confer standing because it is not a concrete and particularized injury. However, the Court left open the possibility that if Plaintiff had asserted a false advertising, misrepresentation, or deceptive practices claim, then the Court may have found Plaintiff had Article III standing.

In this case, Plaintiffs have asserted false advertising, misrepresentation, and deceptive practices claims. As such, Plaintiffs' MCC is sufficient to survive a Motion to Dismiss on this issue.

### F.) Plaintiffs Not Mentioned in MCC

Plaintiffs not mentioned in the MCC are dismissed without prejudice from this action. Davis-Bell v. Columbia Univ., 851 F.Supp.2d 650, 688 (S.D.N.Y. 2012). This does not include Plaintiffs whose cases were transferred to this Court after the MCC was filed. Accordingly, Plaintiffs Nezzie Rose Christina and Mariela Nahir Rodriguez-Ortiz's claims are dismissed without prejudice.

For the aforementioned reasons, Defendants' Motion to Dismiss (Doc. No. 26 & 27) is **DENIED**.

## IV.     DISCOVERY

The parties shall proceed with focused discovery limited to the issues of whether Defendants' products contain synthetic flavors or orange pulp, oil, or essence at levels significantly in excess of those found in raw processed orange juice or otherwise permitted by FDA regulations and whether Defendants add to their not-from-concentrate orange juice products any water-soluble constituents of orange essence.  The parties shall submit a joint proposed discovery plan within thirty (30) days of the date of this order, **on or before Monday, April 1, 2013**.

## V.     CONCLUSION

Defendants' Motion to Dismiss (Doc. No. 26 & 27) is **DENIED**.  The parties shall submit a joint proposed discovery plan **on or before Monday, April 1, 2013**.

**IT IS SO ORDERED**.


Date:  March 1, 2013  **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri Fernando J. Gaitan, Jr.
Chief United States District Judge